IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:19–CV–00247–BR

ALL SEASONS RESTORATION, INC.　)
d/b/a SERVPRO OF MIDTOWN　　　)
MANHATTAN,　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　)
　　　v.　　　　　　　　　　　　　)　　　　　ORDER
　　　　　　　　　　　　　　　　)
FRANK FORDE, JR. and EVOLVE　　)
SNEADS FERRY, LLC,　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　)

This matter is before the court on defendants' motion to dismiss, (DE # 23), to which

plaintiff filed a response in opposition, (DE # 25), and defendants filed a reply, (DE # 26).  This

motion is ripe for disposition.

## I.　　BACKGROUND

In September 2018, Hurricane Florence damaged defendants' apartment buildings in

Sneads Ferry, North Carolina.  (Sec. Am. Compl., DE # 22, at 2.)  Plaintiff contends defendants

needed disaster-recovery services and executed a contract authorizing plaintiff to perform those

services.[1]  (Id. (citing Authorization, Ex. A, DE # 22-1).)  Plaintiff alleges defendants emailed

plaintiff "the executed Authorization" on 5 October 2018.  (Id.)  "Through the executed

Authorization," plaintiff contends, "[d]efendants agreed to pay for [p]laintiff's disaster-recovery

services in the event defendants' insurance carrier did not pay for such services."  (Id. at 3.)

Plaintiff asserts it began work on defendants' apartments, with defendants' knowledge, and

completed the work in November 2018.  (Id. at 3, 5.)  Finally, plaintiff contends it submitted an

---

[1] For purposes of this order, the court will refer to the purported contract, filed by plaintiffs at DE # 22-1, as the
"Authorization."

invoice to defendants and defendants' insurance carrier, but has not been paid for the services provided. (Id. at 3.)

Plaintiff instituted this action on 19 December 2019 alleging breach of contract and, in the alternative, *quantum meruit*. (DE # 1.) On 7 January 2020, plaintiff filed an amended complaint, substituting defendant "Frank Evolvcos" with "Frank Forde, Jr." (See DE # 5, at 1.) Thereafter, defendants moved to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (DE # 11.) Plaintiff responded in opposition and sought leave to file a second amended complaint on 21 February 2020. (DE ## 17, 15.) On 4 May 2020, the court granted the motion for leave to file a seconded amended complaint and denied the motion to dismiss as moot. (DE # 21.) On 5 May 2020, plaintiff filed the second amended complaint, adding an additional alternative claim for breach of implied-in-fact contract. (See DE # 22.) On 19 May 2020, defendants moved to dismiss that complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (DE # 23.)

## II.    DISCUSSION

A 12(b)(6) motion to dismiss tests the sufficiency of a complaint. SD3, LLC v. Black & Decker (U.S.), Inc., 801 F.3d 412, 441 (4th Cir. 2015) (citation omitted). "'[I]mportantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" Id. (quoting Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). Thus,

> a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.

Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999) (citation omitted).

## A. Breach of Contract

Defendants contend the breach of contract claim should be dismissed because plaintiff failed to allege what "'disaster-recovery services' were, how those services were priced, or how the total that it seeks was determined, much less that any of the [d]efendants ever agreed to pay those amounts." (DE # 24, at 7.) Defendants contend "[t]he documents attached to [p]laintiff's [s]econd [a]mended [c]omplaint show, at best, on their face, an agreement to perform unspecified services for an unspecified sum of money." (Id. at 11.)

Plaintiff contends the Authorization is clear as to the services to be performed and the price of those services. (DE # 25, at 8.) It claims the contract "states that [d]efendants were authorizing [p]laintiff 'to perform any and all necessary cleaning and/or restoration services on Customer's property located at the address above, and with respect to items that need to be cleaned at a remote location to remove and clean such items as necessary.'" (Id. (quoting DE # 22-1, at 1).) It contends those services were further specified as:

> surveying the extent of damage and fully inspecting the premises; identifying for the source/type of water intrusion and visible mold growth; drying of moisture and controlled reduction of humidity; removal of water from affected areas; moving of and blocking of furniture; lifting of carpets to remove water; removal of saturated carpet pads and, where necessary, carpets; application of EPA-registered disinfectants; and disposal of refuse.

(Id. (quoting DE # 22-1, at 2).) As to price, plaintiff contends the Authorization is also clear because it specifies:

> The exact price of restoring your property following water damage is virtually impossible to determine on our first visit. A verbal briefing will be provided to you and/or your insurance adjuster. The scope of work can change due to unforeseen circumstances. The final bill will be forwarded to you and/or your insurance carrier upon completion.

(Id. (quoting DE # 22-1, at 2).)  Thus, it contends, it has stated a claim for breach of contract because defendants knowingly agreed to this price term and subsequently failed to pay.  (Id. at 10.)

To prevail on a breach of contract claim, plaintiff must show: "'(1) existence of a valid contract; and (2) breach of the terms of that contract.'"  Howe v. Links Club Condo. Ass'n, 823 S.E.2d 439, 448 (N.C. Ct. App. 2018) (quoting Poor v. Hill, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000)).  "'[A] valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement.'"  Connor v. Harless, 626 S.E.2d 755, 758 (N.C. Ct. App. 2006) (quoting Maxwell v. Michael P. Doyle, Inc., 595 S.E.2d 759, 763 (N.C. Ct. App. 2004)).  "[T]he nature and *extent of the service to be performed*, the place where and the person to whom it is to be rendered, and *the compensation to be paid*" are essential elements of a contract for service.  Rider v. Hodges, 804 S.E.2d 242, 246 (N.C. Ct. App. 2017) (emphasis in original) (quoting Croom v. Goldsboro Lumber Co., 108 S.E. 735 (N.C. 1927)).  "'If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement.'"  Id. (quoting Boyce v. McMahan, 208 S.E.2d 692, 695 (N.C. 1974)).

Plaintiff contends its price provision—noting the exact price is virtually impossible to determine on the first visit and promising a verbal briefing—is sufficient because the scope of disaster-recovery services is "inherently indefinite."  (DE # 25, at 10.)  In doing so it relies on Shelton v. Duke Univ. Health Sys., wherein a patient signed an agreement requiring her to pay the "'amount incurred by the patient in accordance with the regular rates and terms of the Hospital at the time of patient's discharge.'"  633 S.E.2d 113, 114 (N.C. Ct. App. 2006).  The North Carolina Court of Appeals affirmed this price provision, noting the scope of medical care is inherently unforeseeable and that the plaintiff agreed to pay the hospital's "regular" rates for

4

the services provided.  Id. at 116.  In Shelton, the plaintiff admitted the hospital's "regular" rates existed on a "charge master," and did not argue she was charged anything other than those rates. Id.  Thus, the court held "the price term of 'the regular rates and terms of the Hospital at the time of patient's discharge' was 'definite and certain or capable of being made so.'"  Id. (quoting Elliott v. Duke Univ., Inc., 311 S.E.2d 632, 636 (N.C. Ct. App. 1984)).

Even assuming the type of services are inherently unpredictable, the facts of this case differ from those in Shelton.  Here, plaintiff has failed to allege *any* method for determining the cost of services to be provided—it makes no reference to "regular rates," provides no "charge master," mentions no hourly labor or equipment rates, or standard costs for materials.  See Connor, 626 S.E.2d at 758 (finding no meeting of the minds as to price where the contract provided the price to be paid was fair market value at the time of purchase based on at least two appraisals, but no mechanism existed to address price discrepancies between those appraisals). As such, plaintiff has failed to allege a valid contract existed, and its breach of contract claim will be dismissed.

### B.  Breach of Implied-in-Fact Contract

Defendants allege plaintiff's claim for breach of implied-in-fact contract must also fail because plaintiff has "failed to allege that the parties mutually agreed upon the services that would be rendered or what [p]laintiff would charge for those services."  (DE # 24, at 17.)  They assert plaintiff "does not specify what conduct established a meeting of the minds on all materials terms, including price."  (Id.)  Plaintiff contends an express agreement on price is not required to form an implied-in-fact contract.  (DE # 25, at 12.)  It asserts an implied-in-fact contract is established by examining the parties' conduct rather than their explicit words.  (Id. at 11–12 (citations omitted).)

An implied-in-fact contract "arises where the intent of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts." Creech v. Melnik, 495 S.E.2d 907, 911 (N.C. 1998) (citation omitted). "'[I]ts terms may not be expressed in words, or at least not fully in words. The term, implied in fact contract, only means that the parties had a contract that can be seen in their conduct rather than in any explicit set of words.'" Miles v. Carolina Forest Ass'n, 604 S.E.2d 327, 333 (N.C. Ct. App. 2004) (quoting Ellis Jones, Inc. v. Western Waterproofing Co., No. 838SC52, 1984 N.C. App. LEXIS 2942, at *9–10 (N.C. Ct. App. Feb. 21, 1984)); see also Se. Caissons, LLC v. Choate Constr. Co., 784 S.E.2d 650, 656–57 (N.C. Ct. App. 2016) ("A valid contract may be implied in light of the conduct of the parties and under circumstances that make it reasonable to presume the parties intended to contract with each other." (citation omitted)); Archer v. Rockingham Cnty., 548 S.E.2d 788, 793 (N.C. Ct. App. 2001) ("An implied contract refers to an actual contract inferred from the circumstances, conduct, acts or relations of the parties, showing a tacit understanding."). Thus, "[w]ith regard to contracts implied in fact, . . . one looks . . . to the actions of the parties showing an implied offer and acceptance." Creech, 495 S.E.2d at 911–12.

In Lake Toxaway Cmty. Ass'n v. RYF Enters., LLC, the plaintiff sought payment for the cost of maintaining the roads and lake within the development where the defendant owned property. 742 S.E.2d 555, 560 (N.C. Ct. App. 2013). The defendant alleged it had no obligation to the plaintiff for those costs. Id. at 558. The court held "implicit in defendant's acceptance of the benefits of using the roads and the lake, was an agreement to pay for the upkeep, maintenance and repair of the roads and lake." Id. at 560; see also Miles, 604 S.E.2d at 333 (finding an implied-in-fact contract where the plaintiffs received benefits to their property and "were on clear notice that these benefits were being incurred"). Thus, because the defendant

6

benefited from the use of the roads and lake, the court concluded a contract implied-in-fact existed and the defendant was liable for the reasonable value of the maintenance provided.[2] Compare Lake Toxaway, 742 S.E.2d at 560–61, with Sanchez v. Cobblestone Homeowners Ass'n of Clayton, 791 S.E.2d 238 (N.C. Ct. App. 2016) (concluding the trial court did not err in finding no implied-in-fact contract where the plaintiff "rarely, if ever" used the amenities maintained by the association and thus did not benefit from the services rendered).

Comparably in Ellis Jones, the plaintiff alleged it agreed to provide material and perform work and the defendant agreed to pay for the performance of this work. 1984 N.C. App. LEXIS 2942, at *9–10. "Plaintiff's evidence tended to show that there was an agreement that plaintiff would do the splay base work and other work and that defendant would pay plaintiff for this work (defendant's statement that there was 'plenty of money to do it with.')." Id. at *10. Even though "[p]laintiff never sent defendant a price quote for the work, and defendant never approved plaintiff's plans to install the splay base," id. at *4–5, the court held "[t]he fact that defendant's representatives observed plaintiff doing the work and did not tell plaintiff to stop the job was conduct consistent with the existence of a contract," id. at *10. Thus, the court concluded the trial judge correctly instructed the jury on an implied-in-fact contract.

Here, plaintiff alleges defendants needed disaster-recovery services, authorized plaintiff to perform those services, agreed to pay for the services, then "periodically email[ed] . . . [p]laintiff's Office Manager and other of [p]laintiff's agents, regarding scheduling and sequencing," as the work proceeded for several weeks. (DE # 22, at 3.) Finally, plaintiff alleges it completed the disaster-recovery services, submitted an invoice to defendants, and have not been paid. (Id.) Plaintiff has pleaded sufficient evidence to state a claim that implicit in

---

[2] The court made no mention of whether the defendant knew the cost of maintaining the property prior to receiving an invoice for its pro rata share.

defendants' acceptance of the benefits to its property was an agreement to pay for those benefits. As such, considering the conduct of the parties as alleged, plaintiff has pleaded sufficient evidence to state a claim for breach of an implied-in-fact contract.[3]

### C. Quantum Meruit

Defendants contend plaintiff's *quantum meruit* claim should be dismissed because plaintiff also pled the existence of an enforceable contract. (DE # 24, at 19.) They contend "'an express contract precludes an implied contract with reference to the same matter.'" (<u>Id.</u> (quoting <u>Ron Medlin Const. v. Harris</u>, 681 S.E.2d 807, 810 (N.C. Ct. App. 2009), <u>aff'd as modified and remanded</u>, 704 S.E.2d 486 (N.C. 2010)). Defendants assert that "[i]t matters not that the document upon which the [p]laintiff bases its claim for breach of contract is not enforceable," (<u>id.</u> at 19), "no claim in *quantum meruit* may be pled in the alternative when plaintiff pleads the existence of an express agreement as the basis for its claim for breach of contract and attaches that document to its pleadings," (<u>id.</u> at 20). Plaintiff asserts North Carolina law makes clear that claims for breach of contract and *quantum meruit* may be pursued simultaneously as alternative claims. (DE # 25, at 16–17.)

Rule 8(d) of the Federal Rules of Civil Procedure clearly allows a party to plead alternate and inconsistent claims. Fed. R. Civ. Pro. 8(d). "Under North Carolina law, '[q]uantum meruit operates as an equitable remedy based upon a quasi contract or a contract implied in law which provides a measure of recovery . . . in order to prevent unjust enrichment.'" <u>Military & Fed. Constr. Co. v. Ace Elec., Inc.</u>, No. 7:14-cv-23, 2015 U.S. Dist. LEXIS 83995, at *15 (E.D.N.C.

---

[3] In its reply brief, defendants assert "[p]laintiff's claim of implied contract/unjust enrichment must be dismissed . . . . As it admits, the relationship between the [p]laintiff and the [d]efendants is governed by the document it attaches to the [c]omplaint, and as a matter of law, this Court may not imply a contract on that same subject matter." (DE # 26, at 10.) To the extent defendants contend plaintiff's claim for breach of implied-*in-fact* contract should be dismissed because it also pled breach of express contract, that argument is rejected for the reasons discussed *infra*.

8

June 29, 2015) (quoting <u>Ron Medlin Constr.</u>, 704 S.E.2d at 489).  It is well settled that "an

express contract precludes an implied contract with reference to the same matter."  <u>Ron Medlin</u>

<u>Constr.</u>, 681 S.E.2d at 810 (citation omitted).  However, "[w]hile a party cannot *recover* on both

a contract and a quasi-contract claim, [p]laintiff need not elect between these remedies at [the

pleading stage]."  <u>MLU Servs. v. Lawrence Mobile Home Serv.</u>, No. 5:17-cv-565, 2019 U.S.

Dist. LEXIS 25901, at *14 (E.D.N.C. Feb. 19, 2019) (citation omitted); <u>James River Equip., Inc.</u>

<u>v. Mecklenburg Utils., Inc.</u>, 634 S.E.2d 557, 560 (N.C. Ct. App. 2006) (holding the plaintiff was

allowed to pursue a claim in *quantum meruit* as an alternative, even though it expressly alleged

the existence of an express contract), <u>appeal dismissed and disc. rev. denied</u>, 644 S.E.2d 226

(N.C. 2007); <u>Ellis Jones</u>, 312 S.E.2d at 218 ("Because plaintiff's pleadings and evidence were

broad enough to support the *alternative theories* of an implied in fact contract and an implied in

law contract, the trial judge should have instructed on both theories." (emphasis added)).

      Defendant relies in part on <u>Dillon v. The Leazer Grp., Inc.</u> for the proposition that these

claims may not be pled in the alternative.  (<u>See</u> DE # 24, at 20 (quoting <u>Dillon</u>, 374 F. Supp. 3d

547, 561–62 (E.D.N.C. 2019).)  However, in <u>Dillon</u>, the court did not say the plaintiff was

prohibited from asserting a claim for unjust enrichment as an alternative to one for breach of

contract, rather, the court held that he failed to actually do so.  374 F. Supp. 3d at 561–62.  It

held, "plaintiff does not allege conferring a benefit in the absence of 'an express contract to pay,'"

thus, "under federal pleading rules, plaintiff has not stated facts sufficient to assert a claim of

unjust enrichment, in the alternative or otherwise, against defendant []."  <u>Id.</u>  Here, plaintiffs

allege "in the event the Court or jury concludes that no express contract existed . . . [p]laintiff,

over a period of several weeks, provided valuable disaster-recovery services to [d]efendants."

9

(DE # 22, at 4.) As such, plaintiff has alternatively alleged it conferred a benefit in the absence of a contract.

Defendants' reliance on Ron Medlin and Jenco, for the proposition that it does not matter that the express contract is unenforceable, is equally unavailing. (DE # 24, at 19.) Those cases involved *illegal* contracts entered by unlicensed contractors. See Ron Medlin, 681 S.E.2d at 809; Jenco v. Signature Homes, 468 S.E.2d 533, 535 (N.C. Ct. App. 1996). In both cases, unlicensed contractors entered into express contracts and then became licensed and/or transferred the contract to a licensed entity. Both the unlicensed and licensed contractors sought to recover in *quantum meruit*. The licensed contractors acknowledged there was a contract, but contended they were not parties to it. The court held "the focus, in the quantum meruit context, is on whether there is an express contract *on the subject matter at issue* and not on whether there was a contract between the parties." Ron Medlin, 681 S.E.2d at 810 (emphasis in original). As to the unlicensed contractors, the court held the purpose of licensing statutes, which prohibit unlicensed contractors from recovering in contract, "would not be promoted if an individual who violated the contractor licensing statutes could then, in effect, enforce his contract by the means of having another entity perform the contract and sue based on quantum meruit." Id.; see also Joe Newton, Inc. v. Tull, 330 S.E.2d 664, 667 (N.C. Ct. App. 1985) ("The same rule which prevents an unlicensed contractor from recovering for breach of the construction contract also denies recovery on the theory of quantum meruit."). Thus, the court held the defendants could not recover in *quantum meruit* that which they were statutorily prohibited from recovering.

Here, the existence of a valid contract has not been proven nor admitted (in fact it is actively contested), and plaintiff has properly pled a claim for *quantum meruit* in the alternative. As such, defendants' motion to dismiss this claim will be denied.

10

**D. Individual liability of Frank Forde, Jr.**

Defendants contend plaintiff has failed to establish any individual liability on behalf of Forde. (DE # 24, at 13.) They assert the documents relied on by plaintiff to show the existence of a contract make clear that Forde was a known agent, acting within the scope for a disclosed principal, and thus cannot be held liable for any breach. (Id. at 14–15.)

Plaintiff contends Forde signed the Authorization as "customer" and did not identify himself as an agent for Evolve Sneads Ferry, LLC. (DE # 25, at 10.) It further asserts Forde sent emails with the signature line "Evolve Construction, LLC" and not Evolve Sneads Ferry, LLC. (Id. at 11.) Thus, it asserts, the communications do not disclose on their face that Forde was an agent of Evolve Sneads Ferry, LLC. (Id.)

"Whether an agent is subject to personal liability for acts done on behalf of his principal depends on the circumstances of the case." Baker v. Rushing, 409 S.E.2d 108, 112 (N.C. Ct. App. 1991); see also Shapemasters, Inc. v. Accetturo, 781 S.E.2d 531 (N.C. Ct. App. 2016) (unpublished) (noting the intent of the parties, revealed by considering the transaction as a whole, determines liability). An authorized agent who enters a contract on behalf of a disclosed principal is not generally liable on the contract, Baker, 409 S.E.2d at 112, but "[a]n agent who makes a contract for an undisclosed principal is personally liable as a party . . . unless the other party had actual knowledge of the agency and of the principal's identity," Carolina Power & Light Co. v. Alt. Forks, L.L.C., No. COA07-1347, 2008 N.C. App. LEXIS 1433, at *9 (N.C. Ct. App. Aug. 5, 2008) (quoting Howell v. Smith, 134 S.E.2d 381, 383 (1964)). "Mere suspicion and means of knowledge do not amount to actual knowledge." Howell, 134 S.E.2d at 384.

Here, plaintiff alleges "Frank Forde, Jr. provided [p]laintiff with 'the executed Authorization' to proceed with the disaster-recovery work." (DE # 22, at 2–3.) It provides a

11

copy of that Authorization showing Francis X. Forde Jr. signed that document next to "Customer's Signature." (DE # 22-1, at 1.) Further, plaintiff contends Forde sent emails to plaintiff with the signature block "Director of Development" for "Evolve Construction, LLC." (See DE ## 22-2, 22-3.) As such, drawing all reasonable factual inferences from those facts in favor of plaintiff, it has sufficiently pled its claims against Frank Forde, Jr.

### III.      CONCLUSION

For the reasons stated above, defendants' motion to dismiss, (DE # 23), is ALLOWED IN PART and DENIED IN PART. Plaintiff's breach of express contract claim (count one) is DISMISSED, and plaintiff's *quantum meruit* and breach of implied-in-fact contract claims (counts two and three) may proceed.

This 1 March 2021.

_____
W. Earl Britt
Senior U.S. District Judge